IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.L. by his parents,<br>SHANNON HAYSLETT and<br>CHRISTOPHER LLOYD<br><br>　　　　Plaintiffs,<br><br>v.<br><br>SPECIAL SCHOOL DISTRICT<br>OF ST. LOUIS COUNTY and<br>FERGUSON-FLORISSANT<br>SCHOOL DISTRICT<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

Plaintiff A.L. (Student), by his parents, Shannon Hayslett (Mother) and Christopher Lloyd (Father) (collectively, Parents), seeks partial reversal of a special education decision of the Missouri Administrative Hearing Commission following a due process hearing, pursuant to 20 U.S.C. § 1415(i)(2)(A).

## **PARTIES**

1. Plaintiff A.L. is a nine-year-old African American boy enrolled in the fourth grade in the Fergusson-Florissant School District. He has an educational diagnosis of Language Impairment, Sound System Disorder and Specific Learning Disabilities in Basic Reading, Reading Fluency and Written Expression. Plaintiff's parents, Shannon Hayslett and Christopher Lloyd, are residents of St. Louis County and active participants in A.L.'s education and rearing. Both parents are educators.

2. Defendant FFSD is responsible for providing A.L. general education and is

1

responsible for teaching a general curriculum, including skills such as reading, writing, and math. Defendant FFSD is in St. Louis County, State of Missouri, and subject to Federal and state law and regulations, including by the U.S. Department of Education.  The Superintendent of FFSD is Dr. Joseph Davis and its main administrative office is 8855 Dunn Rd., Hazelwood, MO 63042.

3.  Defendant Special School District of St. Louis County is responsible for providing A.L. special education services. Defendant SSD is in St. Louis County, State of Missouri, and subject to Federal and state law and regulations, including by the U.S. Department of Education.  The Superintendent of SSD is Dr. Michael Maclin and its main administrative office is located at 12110 Clayton Rd., Town & Country, MO 63131.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A) of the Individuals with Disabilities Act (IDEA) and 28 U.S.C. § 1331. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that all parties reside or conduct business in this district and all events described in this Complaint occurred within the Eastern District of Missouri. Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202.

5. On May 1, 2023, Plaintiff filed a Due Process Petition before the Missouri Administrative Hearing Commission, exhausting administrative remedies.

## STATUTORY FRAMEWORK

6. The purpose of IDEA is to provide a free appropriate public education (FAPE) to all children with disabilities in the United States. It grants disabled students and their parents an enforceable substantive right to public education,

along with procedural safeguards to ensure that the rights of students and parents are protected.

7. The IDEA conditions federal financial assistance upon a state's compliance with IDEA's substantive and procedural requirements. States like Missouri that qualify for federal funds, as well as local educational agencies such as FFSD and SSD that receive such funds, must develop policies assuring all disabled children a FAPE.

8. The IDEA includes the child find mandate, which requires school districts to identify, locate, and evaluate all children with disabilities who are in need of special education and related services, regardless of the severity of their disabilities. 20 U.S.C. § 1412(a)(3)(A); 34 C.F.R. § 300.111; Missouri State Plan for Special Education, Part B, Regulation III. Missouri state policy specifies that the district's obligation extends to students who are suspected of being a student with a disability and in need of special education even though they are advancing from grade to grade.

9. To be eligible for a FAPE under the IDEA, a student must have a disability and must need special education and related services. IDEA lists several disability categories, including "specific learning disability," which is defined as a "disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written . . . including conditions such as . . . dyslexia." 34 C.F.R. § 300.8(10).

10. Pursuant to Missouri House Bill No. 2379, the State of Missouri ordered the Department of Elementary and Secondary Education (DESE) to develop guidelines for the appropriate screening of students for dyslexia and related

disorders.  The screenings were ordered to begin in 2018 and follow the findings and recommendations of the task force created by the bill. Mo. H.B. 2379, 98th Gen. Assemb., 2d. Reg. Sess. (Mo. 2016).

11.   The task force guidance required all public schools to screen all children in kindergarten through third grade to locate children at risk of reading failure. Additional benchmark screens were to be completed mid-year and end of the year for students. The task force set out which essential skills were to be screened at each grade level. The task force published comprehensive guidance for all Local Education Agencies serving students at-risk for dyslexia. DESE, *Serving Students at-risk for Dyslexia: Guidance to LEAs* (2018), *available at:* https://dese.mo.gov/media/pdf/curr-dyslexia-serving-students-at-risk-lea-guidance  (hereinafter "Guidance Doc."). DESE was charged with providing definitions related to best practices for dyslexia identification and remediation.

12.   The guidance document published on the DESE website gave all public school districts pertinent information on dyslexia, appropriate supports and accommodations, and recommended teacher training and provided definitions of key terms, characteristics of dyslexia, and key principles for remediating dyslexia.

13. DESE also listed behavioral indicators of students at risk of dyslexia.  For children in pre-kindergarten, the risk factors included: delayed speech; mispronouncing words; difficulty naming objects; struggles learning and naming colors and letters; difficulty creating rhymes; difficulty following multi-step directions; and uninterested in reading/books. (*Id*. at 16).  For grades K-2, the risks included: trouble matching letters to correct sounds; difficulty blending letter sounds; confusing letters that look similar; trouble with directionality; difficulty

learning alphabet, numbers, days of the week; avoids reading; spelling inconsistently; trouble remembering sight words; trouble with copying; poor handwriting; reading level below expectations; lacks confidence about school; and exhibits anxiety.

14. In Missouri, at all relevant times herein, the programs and procedures to achieve state compliance with the IDEA and its implementing regulations are set forth at Mo. Rev. Stat. § 162.670 *et seq.* and the Missouri regulations for implementing Part B of IDEA, the Missouri State Plan for Special Education, Part B, Regulation III ("State Plan").

## STATEMENT OF FACTS

### Kindergarten 2019-2020

15. FFSD first identified A.L.'s struggles in kindergarten pursuant to Missouri's state-mandated reading screening. He scored a 1 out of 6 in "concepts of spoken word." This section is the first portion of the screener, but when he failed that section, FFSD did not conduct the remaining portions. The test required A.L. to repeat back short sentences such as "Tom ran home." A.L. was unable to complete this task expected of all kindergartners.

16. FFSD did not provide the screener results to Parents, and his kindergarten teacher's feedback indicated that A.L. was doing fine in class.

17. A.L. also struggled with speech articulation and handwriting. FFSD made no attempt to evaluate him for suspicion of a disability.

18. Parents, who had some concerns about A.L.'s reading ability, sought outside help and enrolled A.L. in the University of Missouri-St. Louis (UMSL) fall and summer literacy clinic.

5

**First Grade 2020-2021**

19. FFSD again provided state-mandated screeners to A.L. in first grade. He again failed the first section, "concepts of spoken word," and was still unable to parrot back short sentences to the teacher with accuracy. FFSD placed him into a reading intervention group utilizing a program called Systematic Instruction in Phonological Awareness, Phonics and Sight words (SIPPS) for the entire school year. FFSD did not refer A.L. for an evaluation for a suspicion of learning disability and did not inform Parents of his performance on the screener.

20. FFSD provided students virtual instruction during COVID from August of 2020 through April 22, 2021.  A.L. attended in-person instruction as soon as FFSD offered it.

21. Although A.L. displayed multiple risk factors, FFSD did not refer him for an evaluation for suspicion of a disability. His first-grade teacher believed that referrals to the Care Team, the process to refer a student for additional services or interventions, were suspended during COVID.

22. A.L. was a non-reader his entire first-grade year. Parents again enrolled A.L. in the UMSL summer literacy clinic, and he participated in a Book Buddies program through the local library. He also attended an FFSD summer school program that was offered to all district students.

**Second Grade 2021-2022**

23. A.L. entered second grade as a non-reader, reading on Level A, beginning kindergarten level.

24. FFSD again placed A.L. in reading intervention utilizing the SIPPS program for the entirety of second grade. When he continued to perform below

6

grade-level expectations, the District offered A.L. an hour a day of before-school reading intervention from January to May of 2022, which he attended.

25. In the spring, the District tested him utilizing the Galileo benchmark screener and he scored 8%, significantly below grade-level expectations.

26. A.L.'s teacher had concerns with his speech and articulation that were significant enough for her to ask an SSD speech therapist to listen to him. No one conducted formal assessments at that time, and the Districts did not formally identify A.L.'s speech delays until July of 2023, after due process was filed.

27. A.L. finished second grade reading below grade-level expectations. His end-of-second-grade report card indicated unsatisfactory progress in his academic skills and "Basic/Needs Improvement" in reading, writing, and math, despite perfect attendance throughout the year. FFSD did not maintain any documentation or provide any information to Parents regarding any of A.L.'s assessments.

28. Parents again enrolled A.L. in the UMSL summer reading clinic as well as the UMSL writing clinic. A.L. attended summer school at FFSD, which offered it to all students. He also participated in a reading program through the St. Louis County Library.

### Third Grade 2022-2023

29. A.L. was still not progressing in reading, writing, or math and was behind all grade-level expectations as he entered third grade. The gaps with his peers were becoming much more noticeable. He also continued to have speech articulation issues and language concerns. FFSD had no procedures in place to share data from one year to the next and as a result, his teacher was not provided any information on A.L.'s prior reading levels, interventions, or dyslexia

7

screenings.

30. In mid-September 2022, A.L. took a state-mandated Dyslexia Assessment. His performance indicated that he was unable to produce words that rhyme, a skill students should have mastered by kindergarten or first grade.

31. FFSD again placed A.L. in SIPPS programming; although this was A.L.'s third year of the program, he tested into the very beginning level and still struggled with basic vowel sounds and could not rhyme words like "bat." The first level of SIPPS is designed to be completed over the course of a few days.

32. A.L.'s teacher was concerned with A.L.'s focus and the fact that he was regularly off-task and felt his inattentiveness was compromising his understanding of concepts taught in class. She informally provided him several accommodations including seating close to her, reduced work, and one-on-one support. She was also concerned with his speech, describing it as "mush mouth."

33. In early October of 2022, Parents began asking explicitly for help. On October 5, 2022, Mother emailed A.L.'s teacher, Ms. Goldstein, to formally request a Section 504 plan (referring to Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination on the basis of disability). Ms. Goldstein forwarded the email to the school counselor, Linda Murphy, to get the process started. She also referred A.L. to the Care Team, the mechanism by which a teacher at FFSD can initiate the evaluation process and, if necessary, special education services.

34. On October 27, 2022, Mother returned all forms requested of her. The documentation included a circle around "educational records/evaluation" and a note indicating that this was her area of concern for A.L. She expressed concerns with reading fluency, written expression, and comprehension.

8

35. On November 1, 2022, without Parents' knowledge or presence, FFSD staff conducted a Care Team meeting. His teacher noted A.L. was below level in all areas, struggled with concentration, and his writing was illegible. The team referred him for additional interventions via the SIPPS program, data-gathering, and a follow-up meeting in six weeks. Parents were not informed of the meeting or the resulting plan. No follow-up meeting occurred.

36. On December 13, 2022, Mother sent an email inquiring about her October request for a 504 plan. The District told her the school had denied the request and she should contact her pediatrician to have A.L. tested for dyslexia. Mother contacted her pediatrician as instructed by District and learned pediatricians typically do not conduct dyslexia testing. She also reached out to the Missouri Department of Elementary and Secondary Education (DESE) and was told to contact the Missouri Office of Civil Rights. She informed FFSD of her efforts, and FFSD again told her to get a private evaluation. FFSD did nothing at that time for A.L.

37. On January 4, 2023, Mother emailed multiple FFSD staff members indicating that she understood the request for a Section 504 plan to have been denied and requested written confirmation of the denial. A.L. was started over at the beginning of the SIPPS program again at that time.

38. On January 12, 2023, Mother wrote an email requesting an Individualized Education Plan (IEP) for A.L.

39. FFSD held a Section 504 eligibility meeting on January 23, 2023, and provided A.L. with a Section 504 plan for the remainder of the school year. It also noted that Parents had requested a special education evaluation and IEP for A.L.

The 504 team members concluded that they suspected A.L. had disabilities.

40. In February 2023, SSD refused the requested evaluation after determining the documentation submitted by FFSD did not support a suspicion of disability. In reality, the data packet was incomplete and lacked important information such as A.L.'s Galileo scores, writing samples, and intervention data.

41. In mid-April of 2023, Parents retained counsel and renewed their request for an evaluation through counsel.

42. On May 1, 2023, Parents filed their due process complaint.

43. A.L.'s third-grade teacher indicated he ended the school year reading and writing at a kindergarten level.

44. As a result of the filing of the due process complaint, FFSD evaluated A.L. and in late June of 2023, Districts found him eligible for special education services on the basis of a language impairment, sound system disorder, and specific learning disabilities in basic reading skills, written expression, and reading fluency.

45. On June 27, 2023, A.L. began participating in online instruction through NOW!, a private company that offers online interventions for students with dyslexia.

46. Districts determined him eligible for special education on July 12, 2023, and wrote an IEP for A.L. on July 27, 2023.

47. A.L. began receiving special education instruction when the school year began on August 28, 2023. Pursuant to his current IEP, each week he receives 60 minutes of language therapy, 30 minutes of speech therapy, 225 minutes of reading instruction, 150 minutes of instruction in written expression, and 30 minutes of occupational therapy.

## Due Process Hearing and Decision

48. On October 3 and 4, 2023, the Administrative Hearing Commission

(AHC) held a hearing on the petition. As the Districts had conceded Student was a student with a disability and entitled to services, the remaining issue was to determine if Student was entitled to compensatory services.

49. On November 3, 2023, the AHC issued its decision, finding the Districts violated their "child find" obligation under the IDEA by failing to conduct an educational evaluation of Student following Parents' January 2023 request and that Student was entitled to compensatory services. The decision is attached hereto as Exhibit A.

50. The AHC found that the child find violation deprived Student of 14 school days of special education services and ordered Districts to provide 1,386 minutes of compensatory special education services. Parents thus have prevailing party status.

51. The AHC substituted an award of compensatory minutes by SSD in lieu of Parents' request to order Districts to provide compensatory education through the NOW! program.

52. Plaintiffs do not challenge the AHC's finding that the Districts committed a child find violation. They did. Plaintiffs dispute the timing of the violation, which they contend occurred prior to the January 2023 failure to evaluate, and they contest the nature and amount of the compensatory remedy for the violation.

53. The decision of the Commissioner related to the timing of the violation was not supported by the evidence and is inconsistent with the IDEA and Missouri law in the following respects:

    a. The decision is deficient in that it mischaracterizes evidence, fails to

consider evidence, and fails to address obvious evidentiary weaknesses SSD's case. The decision discounts the significant deficits that Student was evidencing in second grade in the areas of reading, writing, and speech, deficits that were sufficient to raise a suspicion of disability and trigger child find obligations. Additionally, the decision fails to credit the concerns of Student's Parents and his third-grade teacher during the beginning of his third-grade year.

b. The decision is deficient in deferring to the opinions of FFSD/SSD witnesses who failed to maintain records from prior teachers, records of prior interventions, or share student files from year to year. The lack of records and repeated dismissal of concerns from Parents resulted in the Care Team inappropriately declining an evaluation in October of 2022 and instead referring Student back into the same unsuccessful intervention for a third year.

c. The decision is deficient in crediting the Districts, and not the Student, with the time the District would have had to complete an evaluation and initiate an IEP had they followed the law and timely granted Parents' request for an evaluation. The Commission found the child find violation occurred when Mother's January 12, 2023, request for an IEP was not honored. The District did not complete the evaluation until July 12, 2023, six months later. The Commission subtracted from Student's compensatory services award the maximum 120 days the evaluation and IEP process could have taken, had the Districts complied with the applicable law. This decision is

12

      contrary to case law and equitable remedies.

   d. The decision is deficient in denying compensatory education to the Student, including tutoring costs to the Parents, despite evidence that the Districts denied A.L. a FAPE, the services offered by SSD/FFSD were not appropriate to compensate him for lost educational opportunities, and the private services parents utilized were appropriate, entitling them to costs and expenses for the program.

54. Plaintiffs did not contest the validity of A.L.'s evaluation or current IEP during the hearing nor do they in this proceeding.

## COUNT I

55. Plaintiffs incorporate and reallege all the foregoing paragraphs in this count.

56. A.L. is a child with a disability as defined by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401(3)(A).

57. SSD and FFSD are Local Educational Agencies (LEA) as defined by the IDEA, 20 U.S.C. § 1401(9). Although SSD is tasked with Special Education services, both districts provide educational services to A.L.

58. Defendants failed to provide A.L. with a free appropriate public education (FAPE), in violation of IDEA and Missouri law, and the order and decision of the AHC should be reversed in part for failure to find that the child-find violation occurred prior to January of 2023, for failure to order the Districts to provide compensatory education for the entire period of the deprivation, and for failure to order costs and expenses to Parents for private tutoring through the NOW! program to be paid by the Districts.

**PRAYER FOR RELIEF**

1. Plaintiffs respectfully request the following relief from the Court:

   a. That this Court assume jurisdiction over this action;

   b. That this Court affirm the decision of the Commissioner that Districts violated the child-find provisions of IDEA;

   c. That this Court find that the child-find violation occurred prior to January 2023;

   d. That this Court order compensatory educational services for A.L. for the entire duration of the violation;

   e. That this Court order compensatory educational services for A.L., namely the provision of compensatory education through the NOW! program, at public expense;

   f. That this Court award Plaintiffs their costs, expenses, and reasonable attorneys' fees;

   g. That this Court award pre and post judgement interest; and

   h. For such other relief as the Court deems just and proper.

Dated: February 1, 2024               Respectfully submitted,

By: /s/Diane L. Dragan               _
DRAGAN LAW FIRM, LLC
Diane L. Dragan (MO 73591)
111 Prospect Ave. Suite I
Kirkwood, MO 63122
Diane@Draganlawfirm.com
314-788-7323
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of the foregoing Complaint was served via email on this 1st day of February 2024, on the following:

Dr. Joseph Davis, Superintendent
Fergusson-Florissant School District
8855 Dunn Rd.
Hazelwood, MO 63042
jdavis@fergflor.org


Dr. Michael Maclin, Superintendent
Special School District of St. Louis County 12110 Clayton Rd
Town and Country, MO 63131
mmaclin@ssdmo.org

James Thomeczek
1120 Olivette Executive Parkway,
Suite 210 St. Louis, MO 63132
James.Thomeczek@tblawfirm.com

Lisa O. Stump
Julie Devine
714 Locust St.
St. Louis, MO 63101
lostump@lashlybaer.com
jdevine@lashlybaer.com

                                                /s/Diane L. Dragan