# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| A.L., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:24CV179  HEA |
| | ) | |
| SPECIAL SCHOOL DISTRICT OF | ) | |
| ST. LOUIS COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants Special School District of St. Louis County ("SSD") and Ferguson-Florissant School District's ("FFSD") Joint Motion to Dismiss. [Doc. No. 28]. Plaintiffs oppose the Motion.  For the reasons set forth below, the Motion to Dismiss will be granted in part and denied in part.

## Facts and Background

On February 1, 2024, Plaintiffs filed a Complaint against the SSD and the FFSD pursuant to the Individuals with Disabilities Education Act ("IDEA"). They also filed a Motion for Attorneys' Fees and Costs under 20 U.S.C. § 1415(i)(3).

In the First Amended Complaint, Plaintiffs allege that Defendants failed to provide a free appropriate public education ("FAPE") under the IDEA (Count I), and they seek attorneys' fees as the prevailing parties pursuant to § 1415(i)(3) (Count II). Plaintiffs bring claims of disability discrimination under § 504 of the

Rehabilitation Act and the Americans with Disabilities Act ("ADA") (Counts III and IV), as well as race and disability discrimination under the Missouri Human Rights Act ("MHRA") (Count V). They ask the Court to find that: Defendants violated the child-find provisions of the IDEA, Defendants failed to provide a FAPE under the IDEA, and that Plaintiffs were the prevailing parties before the Administrative Hearing Commission ("AHC"). They seek damages and request that the Court order Defendants to provide compensatory educational services for the entire duration of the child-find violation.

Plaintiffs' First Amended Complaint alleges the following facts: A.L. is a nine-year-old boy enrolled in the fourth grade in the FFSD. He has a medical diagnosis of dyslexia and educational diagnoses of language impairment, sound system disorder, and specific learning disabilities in basic reading, reading fluency, and written expression.

When A.L. was in kindergarten in 2019, FFSD provided A.L. with a state-mandated reading assessment, and he scored one out of six in "concepts of spoken word." FFSD provided A.L. with another reading assessment in first grade, and he again failed the "concepts of spoken word" section. In 2020, FFSD placed A.L. in a reading intervention group that utilized a program called Systematic Instruction in Phonological Awareness, Phonics, and Sight Words ("SIPPS") for the entire school year but did not notify his parents about the results of his reading

assessments or refer him for an evaluation for suspicion of a learning disability. A.L. entered second grade as a "non-reader," who was reading at a kindergarten level, and FFSD again placed him in the SIPPS program. From January to May 2022, FFSD provided A.L. with an hour of before-school reading intervention.

When A.L. entered third grade in the fall of 2022, his teacher had not been notified about his prior reading levels and interventions because FFSD had no procedures for sharing information about students from one year to the next. When A.L. received a positive result in a state-mandated dyslexia screening in September 2022, FFSD placed him in the SIPPS program. On October 5, 2022, A.L.'s mother sent an email to his teacher to formally request a plan under § 504 of the Rehabilitation Act. The teacher notified the school counselor and referred A.L. to the Care Team, which is the mechanism for FFSD teachers to initiate an evaluation process and special education services. The Care Team referred A.L. to the SIPPS program for data gathering and scheduled a follow-up meeting in six weeks, but the Care Team failed to conduct a follow-up meeting.

On December 13, 2022, A.L.'s mother asked FFSD about her request for a § 504 plan. FFSD informed her that her request had been denied and that she should ask A.L.'s pediatrician to test him for dyslexia. When A.L.'s mother contacted A.L.'s pediatrician, she was told that pediatricians do not ordinarily conduct dyslexia tests. She then reached out to the Missouri Department of

Elementary and Secondary Education and was told to contact the Missouri Office of Civil Rights.

On January 4, 2023, A.L.'s mother emailed multiple FFSD employees requesting written confirmation that the school had denied her request for a § 504 plan. On January 12, she sent an email requesting an Individualized Education Plan ("IEP") for A.L. On January 23, FFSD held a § 504 eligibility meeting, decided to provide A.L. with a § 504 plan for the rest of the school year, noted that A.L.'s parents had requested a special education evaluation, and determined that there was reason to suspect that A.L. had disabilities. In February, SSD refused the requested evaluation based on its determination that FFSD's data packet did not support a suspicion of disability. A.L.'s parents later discovered that the data packet did not include important information such as A.L.'s Galileo scores, writing samples, and intervention data.

In April 2023, A.L.'s parents retained counsel and renewed their request for an evaluation. They filed a due process complaint on May 1. FFSD then evaluated A.L. and, in late June, found him eligible for special education services on the bases of a language impairment, sound system disorder, and specific learning disabilities in basic reading skills, written expression, and reading fluency. Defendants determined that A.L. was eligible for special education on July 12, and

they wrote an IEP for him on July 27. A.L. began receiving special education instruction at the beginning of the school year on August 28.

The AHC held a due process hearing on the petition in October. On November 3, 2023, the AHC issued a decision, finding that Defendants violated their child-find obligation under the IDEA by failing to conduct an educational evaluation of A.L. when his parents requested an evaluation in January 2023. The AHC found that the child-find violation deprived A.L. of 14 school days of special education services and ordered Defendants to provide 1,386 minutes of compensatory special education services.  However, the AHC denied Plaintiffs' request to order Defendants to provide compensatory education through the NOW! program.

Defendants move to dismiss the First Amended Complaint for failure to state a claim. [Doc. No. 28]. They argue that Count I was not timely filed within 45 days of the AHC's November 3, 2023 decision, Count II should be dismissed because it is untimely and Plaintiffs have not proven that they were the prevailing parties, Counts III and IV failed to adequately allege facts establishing bad faith or gross misjudgment, and Count V should be dismissed for failure to exhaust administrative remedies. Plaintiffs oppose the motion to dismiss. [Doc. No. 30]. However, Plaintiffs do not contest the motion to dismiss with respect to Count V, as they concede that they did not exhaust their administrative remedies.

5

**Legal Standard**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When analyzing a motion to dismiss, "a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014). However, courts "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

**Discussion**

**Count I – Failure to Provide a FAPE under the IDEA**

Defendants argue that Count I should be dismissed as time-barred because Missouri has an explicit time limitation for seeking judicial review of the AHC's decision. Plaintiffs acknowledge that Missouri law provides a 45-day time limit for bringing such a claim, but they contend that § 1415(i)(2)(B) does not require the Court to use Missouri's 45-day time limit and that using the 45-day time limit would frustrate the broad remedial purpose of the IDEA.

The IDEA provides that the party bringing an action under § 1415(i)(2)(A) "shall have 90 days from the date of the hearing officer to bring such an action, or,

6

if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows." 20 U.S.C. § 1415(i)(2)(B). Under Missouri law, a party may appeal the AHC's decision in federal court "within forty-five days of the agency's final decision."  Mo. Rev. Stat. § 162.962(3). The Missouri State Plan for Special Education contains regulations implementing Part B of the IDEA and states that "[a]ny party aggrieved by the findings and decisions made in a hearing may appeal the decision within forty-five (45) days to the state courts . . . or in federal court without regard to the amount in controversy." *Missouri State Plan for Special Education: Regulations for Implementing Part B of the Individuals with Disabilities Education Act*, Missouri Department of Elementary and Secondary Education, at 80 (April 2023).

The Court finds that Missouri's 45-day time limit for seeking judicial review of the AHC's decision applies to Count I. *See* 20 U.S.C. § 1415(i)(2)(B); Mo. Rev. Stat. § 162.962(3); *Owner-Operator Indep. Drivers Ass'n v. United Van Lines, LLC*, 556 F.3d 690, 693 (8th Cir. 2009) ("In the usual case, if 'the statute's language is plain, the sole function of the courts is to enforce it according to its terms.'" (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989))). Thus, the deadline for Plaintiffs to appeal the AHC's November 3, 2023 decision was December 18, 2023. Because Plaintiffs filed their complaint on

February 1, 2024, Count I is untimely and must be dismissed. *See* 20 U.S.C.
§ 1415(i)(2)(B); Mo. Rev. Stat. § 162.962(3).

**Count II – Attorneys' Fees under the IDEA**

Defendants argue that Count II should be dismissed as untimely for the same
reasons as Count I. But unlike § 1415(i)(2)(B)'s statute of limitations for merits
actions, the IDEA "does not include a statute of limitations for a prevailing party to
file a cause of action for attorneys' fees." *Richardson v. Omaha Sch. Dist.*, 957
F.3d 869, 873 (8th Cir. 2020) (citing 20 U.S.C. § 1415(i)(2)(B), (i)(3)). In
*Richardson*, the Eighth Circuit agreed with the district court's decision to borrow
the statute of limitations for IDEA merits actions from the state's statutory
framework for IDEA compliance and apply it to a § 1415(i)(3) claim for attorneys'
fees. *Id.* at 875. The court reasoned that doing so would not frustrate the policy
embedded in the IDEA, "particularly in our circuit where we have held that the
statute of limitations period for a prevailing party seeking attorneys' fees does not
begin to run 'until the 90-day period [expires] for an aggrieved party to challenge
the IDEA administrative decision by filing a complaint in court.'" *Id.* (alteration in
original) (quoting *Brittany O. v. Bentonville Sch. Dist.*, 683 F. App'x 556, 558 (8th
Cir. 2017) (per curiam)). Because the statute of limitations period did not begin to
run until February 1, 2024, Count II is timely. *See id.*

8

Defendants assert that Count II also fails because the AHC ordered significantly less relief than Plaintiffs requested and, thus, Plaintiffs were not the prevailing parties. Plaintiffs respond that they were the prevailing parties because the AHC ordered Defendants to provide compensatory education services that altered the legal relationship between the parties and directly benefitted A.L.

"A litigant is a 'prevailing party' if he obtains 'actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Birmingham v. Omaha Sch. Dist.*, 298 F.3d 731, 734 (8th Cir. 2002) (alteration in original). Here, the AHC ordered Defendants to provide A.L. with 1,386 minutes of compensatory educational services. Because those services were actual relief on the merits of Plaintiffs' IDEA claim that materially altered the legal relationship between the parties by modifying Defendants' behavior in a way that directly benefitted A.L., Plaintiffs are the prevailing parties. *See id.* ("This right to compensatory education suffices to make [Plaintiffs] a 'prevailing party' entitled to attorneys' fees."). Accordingly, Count II adequately states a claim.

**Counts III and IV – Disability Discrimination under § 504 of the Rehabilitation Act and the ADA**

Defendants argue that Counts III and IV fail because the First Amended Complaint did not contain factual allegations establishing that Defendants acted in bad faith or with gross misjudgment, which is required to state a claim for

9

violations of the ADA and § 504 that are based on educational services for disabled children. Plaintiffs contend that the allegations regarding Defendants' failure to identify A.L. as a child with a disability in need of special education services over the course of years, Defendants' failure to include relevant documentation in A.L.'s data packet without rational justification, A.L.'s documented signs of dyslexia and failure to meet grade-level expectations, and his teacher's suspicion that A.L. might have a learning disability are sufficient to establish that Defendants acted in bad faith or with gross misjudgment.

"A plaintiff's prima facie case under § 504 requires a showing that the plaintiff (1) was a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on his disability." *Estate of Barnwell ex rel. Barnwell v. Watson*, 880 F.3d 998, 1004 (8th Cir. 2018). Where the alleged § 504 and ADA violations are based on educational services for disabled children, the Eighth Circuit has consistently held that "the plaintiff must prove that school officials acted in bad faith or with gross misjudgment." *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013). To establish bad faith or gross misjudgment, "a plaintiff must show that the defendant's conduct 'depart[ed] substantially from accepted professional judgment, practice or standards [so] as to demonstrate that the person[s] responsible actually did not base the decision on

10

such a judgment.'" *Id.* (alterations in original) (quoting *M.Y. ex rel. J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 889 (8th Cir. 2008)). Bad faith or gross misjudgment requires more than mere non-compliance with the applicable federal statutes. *Richardson*, 957 F.3d at 876. Instead, "[t]he non-compliance 'must deviate so substantially from accepted professional judgment, practice, or standards as to demonstrate that the defendant acted with wrongful intent.'" *Id.* at 876-77 (quoting *B.M. ex rel. Miller*, 732 F.3d at 887). Taking the well-pleaded allegations as true and giving Plaintiffs the benefit of reasonable inferences, the Court finds that Plaintiffs have adequately stated a claim for violations of § 504 of the Rehabilitation Act and the ADA.

**Count V – Race and Disability Discrimination under the MHRA**

Defendants contend that Count V should be dismissed because Plaintiffs failed to exhaust their administrative remedies, and Plaintiffs concede that they did not file a charge of discrimination with the Missouri Commission on Human Rights ("MCHR") prior to bringing their MHRA claim. Because Plaintiffs admit that they did not file a charge of discrimination with the MCHR prior to filing their complaint, they have failed to exhaust their administrative remedies with respect to their MHRA claim. *See Henson v. Union Pacific R.R. Co.*, 3 F.4th 1075, 1080 (8th Cir. 2021) (citing Mo. Rev. Stat. § 213.075.1) (explaining that plaintiffs must exhaust their administrative remedies under Missouri law by filing a charge of

discrimination with the MCHR before brining claims under the MHRA).

Therefore, Count V must be dismissed.

**Conclusion**

Based upon the foregoing analysis, Defendants' Joint Motion to Dismiss is granted in part and denied in part. Count I is dismissed as untimely, and Count V is dismissed for failure to exhaust. Counts II, III, and IV remain viable and  may proceed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion to Dismiss, [Doc. No. 28], is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Counts I and V are **DISMISSED**.

**IT IS FINALLY ORDERED** that Defendants' prior Joint Motion to Dismiss, [Doc. No. 14], is **DENIED** as moot.

Dated this 24th day of October, 2024.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE